UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SEAN D. ANDERSON,

                              Plaintiff,

        v.

ADAM D. BEATTY, et al.,

                              Defendants.

CASE NO. C17-58 RSL-BAT

**REPORT AND
RECOMMENDATION**

        *Pro se* Plaintiff Sean D. Anderson filed this 42 U.S.C. § 1983 civil-rights action alleging

the use of excessive force while he was handcuffed during his arrest.  Dkt. 10 (Amended

Complaint).  Defendants Adam D. Beatty and William F. Anderson, the two arresting officers[1],

move for summary judgment, Dkt. 48; Plaintiff has filed a Response, Dkt 60, to which

Defendants have replied.  Dkt. 61.   The Court recommends **GRANTING** Defendants' summary

judgment motion and dismissing Plaintiff's claims with prejudice.

---

[1] Upon Plaintiff's motion, Defendants Adam D. Beatty and William F. Anderson, the officers who arrested and
handcuffed him, were substituted for the defendants originally named by Plaintiff. Dkt 30.

REPORT AND RECOMMENDATION - 1

1

**FACTS**

2

**A.        Amended Complaint and Plaintiff's Deposition Testimony**

3          Plaintiff alleges that on August 3, 2016, Officer Adam D. Beatty bent back the three

4    middle fingers on Plaintiff's left hand while handcuffing him, causing excruciating pain.  Dkt. 10

5    at p. 3 (as amended by Order Granting Plaintiff's Motion to Amend, Dkt 30).  The Amended

6    Complaint asserts that when Plaintiff told the officers that he was not resisting and that they were

7    hurting him, the officers bent his fingers back further, fracturing his left ring finger and tearing

8    the ligaments.  *Id*.  Plaintiff's original Complaint attaches—and his Amended Complaint

9    references—an MRI report from Harborview Medical Center dated September 27, 2016, as

10   evidence of his injury.  Dkt 6-1.

11          In his deposition, Plaintiff reiterated the Amended Complaint's account of his

12   handcuffing upon arrest.  Dkt 53-1 (Exhibits to Erika Evans Dec.), Ex. 1 at 4[2].  Plaintiff also

13   testified that after his fingers were pulled back during the cuffing process, he was unable to bend

14   them and they were "basically straight out from there on after"; when asked if he favored the

15   finger after the cuffing process, he stated that he "couldn't bend it so I was just keeping it to the

16   side."  *Id.* at 8, 12.  Plaintiff acknowledges that he reported an injury to his toe but did not report

17   any injuries to his finger; he testified that this was because he "couldn't feel" his finger.  *Id.* at 9.

18   Plaintiff testified that he "couldn't feel it [his fingers] for probably three weeks."  *Id*. at 10.

19   **B.        Facts Proffered by Defendants**

20          **1.        Plaintiff's Arrest**

21       On August 3, 2016, Officers Beatty and Anderson responded to a reported armed

22   robbery.  Dkt 50 (Beatty Dec.), ¶7; Dkt 49 (William Anderson Dec.) ¶5.  They saw the suspect

23

---

[2] Page number references for Plaintiff's deposition are to CM/ECF page numbers, not deposition page numbers.

REPORT AND RECOMMENDATION - 2

1    (later identified to be the Plaintiff) comply with the commands of SWAT officers on the scene,

2    and engaged in the process of handcuffing him.  Dkt 50 ¶¶ 11, 12; Dkt 49, ¶¶8, 9.  Because the

3    suspect had been reported to be armed, the officers used a "high risk handcuffing maneuver" that

4    called for extending the arm of the prone suspect upward and taking hold of the first few fingers

5    of the hand while applying the handcuff.  Dkt 50, ¶¶ 13, 14; Dkt 49, ¶¶ 11, 12.  Both officers

6    report that Plaintiff complied with their cuffing directions and did not resist.  Dkt 50, ¶12; Dkt

7    49, ¶ 10.  Both also state that Plaintiff never complained of pain or injury to his hands or fingers

8    at any time during their encounter with them.  Dkt. 50, ¶ 16; Dkt 49, ¶¶16, 19.  The officers' In

9    Car Video, while not capturing the arrest and cuffing process, shows Plaintiff's discussions with

10    detectives after he was taken back to the patrol car.  Dkt 49, Ex. 1.  The video shows no

11    manifestation of pain in Plaintiff's hand or fingers, such as grimacing or favoring the left hand.

12    Dkt 49, Ex. 1.  A screen capture from that video shows plaintiff standing with the fingers of his

13    left hand curled inwards.  Dkt 53-1, Ex. 2.

14              **2.       Plaintiff's Interview by Robbery Detectives**

15              Plaintiff was transported to the Seattle Police Department Robbery Division office to be

16    interviewed; his time and communications during that process are captured on four videos.  Dkt

17    52 (Magan Dec.), ¶ 9-10 and Exs 1-4.  The videos show that during Plaintiff's time in the

18    interview room, he discusses an injury to his toe (from, he says, jumping over a fence) several

19    times, but never mentions any injury to or pain in his hands or fingers.  *Id.* Ex. 1 at 2:19, 32:05.[3]

20    Plaintiff complains that, while being searched prior to the removal of his handcuffs, the

21    searching officer stepped on his injured toe, but makes no comment or manifestation of pain

22    when his hands are moved during the search and when the handcuffs are removed.  *Id*., Ex. 1 at

23

---

[3] All time references are to video run time.

REPORT AND RECOMMENDATION - 3

2:54, 3:24.  In addition, the videos show Plaintiff frequently bending the fingers of his left hand and using that hand normally for multiple actions, including the following:

- pulling up his pants and zipping his sweatshirt (*Id.* Ex. 1 at 3:53, 19:50);

- Resting the weight of his head on his hands (*Id.*, Ex. 1 at 4:57; Ex. 2 at 6:49, 19:24);

- opening, holding and lifting a can of Coca-Cola (*Id.*, Ex. 1 at 27:39, 30:08; Ex. 2 at 24:23, 28:44; Ex. 3 at 17:40, 19:16);

- opening, holding, emptying and flattening bags of chips (*Id.*, Ex. 1 at 24:44, 27:57, 33:13; Ex. 2 at 16:35);

- opening a water bottle (*Id.*, Ex. 2 at 6:08);

- unwrapping, re-wrapping, breaking in two and holding a sandwich, and crushing the paper into a ball (*Id.*, Ex. 2 at 25:56; 26:42; 34:33, 35:18-29);

- Picking up and handling a cigarette (*Id.*, Ex. 3 at 19:05);

- supporting himself on a table or his chair while standing up and sitting down (*Id.*, Ex. 1 at 22:25; Ex. 4 at 6:15, 12:28; 13:31)

- holding a document down while he signs it with his other hand, and reaching out to grasp a different document (*Id.*, Ex. 2:17, 13:27)

- moving his chair closer to the table (*Id.*, Ex.2 at 27:02).

There is no exclamation of pain during any of these activities, nor any non-verbal manifestation of pain, such as grimacing or favoring the left hand.  At the conclusion of his interview, after the detectives have left the room, Plaintiff angrily exclaims that he has not received treatment for his injured toe, despite his request; he does not mention his fingers.  *Id.*, Ex. 4 at 8:59.  Similarly, when different officers return to transport Plaintiff to the King County

REPORT AND RECOMMENDATION - 4

1  Jail, he complains of the lack of treatment for his toe injury, but does not mention any injury to

2  his hand or fingers. *Id.*, Ex. 4 at 15:22.  When his hands are re-handcuffed for transport, he does

3  not flinch or complain of pain. *Id.*, Ex. 4 at 16:29.

4       The written records of Plaintiff's arrest and intake are in accord with the conversations

5  recorded on the videos.  The arresting officers filed no report of injuries or complaints—which

6  would have been mandated had an injury been reported to them.  Dkt 50 ¶18, Dkt 49 ¶ 18.

7  Plaintiff's King County Jail intake form dated August 3, 2016, reports an injury to his toe, but

8  makes no mention or report of an injury to Plaintiff's hand or fingers.  Dkt 53-1 at Ex. 3.

9       **3.     Medical Evidence**

10      An MRI from Harborview Medical Center dated September 27, 2016, shows an injury to

11 Plaintiff's left ring finger.  Dkt 6-1.  The injury was ultimately diagnosed by an orthopedic hand

12 specialist on October 12, 2016, as a radial collateral ligament tear. [4]  Dkt 53-1 at p. 31.  The

13 record contains no medical records between Plaintiff's arrest on August 3 and the Harborview

14 MRI on September 27 that discuss an injury to Plaintiff's hand.

15      Defendants submitted an expert Declaration, Dkt 51, and Report (Dkt 59—redacted

16 version) from Dr. Roger Blauvelt, a hand/orthopedic surgeon, who has reviewed Plaintiff's

17 medical records and the  August 3 squad car and interview room video footage, Dkt 55, Ex. 1

18 and Dkt 49, Exs 1-4.  Dr. Blauvelt opines that an injury of the nature reflected in the medical

19 records "creates immediate pain, deformity and limited use.  One would not move the hand

20

21 [4] The medical records contain mixed information regarding the precise nature of Plaintiff's injury.  The September
   27 MRI reports under "Impression" (1) an "avulsion fracture of the volar plate of the middle phalanx of the fourth
   (ring) finger," (2) a "high-grade partial tear of the radial collateral ligament of the PIP joint of the fourth finger" and
22 (3) a "bone contusion"; the report suggests follow-up radiographs. Dkt 6-1 at pp. 1-2.  Plaintiff received radiographs
   and was examined on October 12, 2016, by orthopedic surgeon Dr. Stephen A.  Kennedy, who reported that the X-
23 Ray showed "no avulsion fractures"; Dr. Kennedy diagnosed a "radial collateral ligament tear of his left ring
   finger."  Dkt 53-1 Ex. 5 at p. 31.  The exact diagnosis is not material to this motion, however; the salient fact is that
   Plaintiff sustained a significant injury to his finger, which is first evidenced on September 27, 2017.

1   normally, and it would be uncomfortable to apply pressure to the digit or move it freely." Dkt 59

2   at p. 3.  Dr. Blauvelt notes that the August 3 video footage, showing complaints of pain in

3   Plaintiff's toe but not his finger, a lack of swelling of the finger or of guarding/disuse of the

4   hand, and Plaintiff's apparent manipulation and leaning on the hand are inconsistent with the

5   existence of such an injury.  *Id.*

6       Dr. Blauvelt also observes that Plaintiff's description of the mechanics of how he was

7   injured (i.e., bending the fingers back) is not consistent with the injury that was diagnosed, which

8   is "typically from an isolated finger that is hyperextended and twisted sideways." *Id.*  Finally, he

9   finds that the delay from the August 3 date Plaintiff asserts he was injured to the late September

10  date when Plaintiff sought medical treatment is "medically inconsistent," because a significant

11  injury of the type that was diagnosed "would be present immediately." *Id.*  Dr. Blauvelt opines

12  that Plaintiff's deposition statement that he was unable to bend his fingers and "unable to feel

13  [his finger] for three weeks," Dkt 53-1, Ex. 1 at 8, 10, makes "no anatomic sense" and is "clearly

14  a non-physiologic response to injury." Dkt 59 at p. 3.  Dr. Blauvelt concludes that, on a more

15  probable than not basis, the August 3 handcuffing "could not have been the medical cause of the

16  injury reported on 9/26/16 because the purported mechanism of injury and the timing are

17  inconsistent with the nature of the injury that was diagnosed." *Id.* at p. 4.

**DISCUSSION**

19  **A.      Summary Judgment Standard**

20      Summary judgment is appropriate when the "movant shows that there is no genuine

21  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

22  R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The central issue is

23  "whether the evidence presents a sufficient disagreement to require submission to a jury or

REPORT AND RECOMMENDATION - 6

1  whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at

2  251-52.

3  The moving party bears the initial burden of showing "that there is an absence of

4  evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

5  (1986).  Where, as here, the moving party does not bear the burden of proof at trial, it can carry

6  its initial burden by presenting evidence that negates an essential element of the nonmoving

7  party's case, or by establishing that the nonmovant lacks the quantum evidence needed to satisfy

8  its burden at trial.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102

9  (9th Cir. 2000).

10  If the moving party meets its initial responsibility, the burden then shifts to the

11  nonmoving party to establish a genuine issue of material fact for trial.  *Matsushita Elec. Indus.*

12  *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).  Genuine disputes are those for which

13  the evidence is such that a "reasonable jury could return a verdict for the nonmoving party."

14  *Anderson*, 477 U.S. at 248.  A mere scintilla of evidence is insufficient to create a factual

15  dispute.  *Id.* at 252.  Likewise, the nonmoving party cannot "defeat summary judgment with

16  allegations in the complaint, or with unsupported conjecture or conclusory statements."

17  *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

18  In ruling on a motion for summary judgment, the Court must draw all reasonable

19  inferences in favor of the nonmoving party, *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, and

20  may not weigh the evidence or make credibility determinations, *Anderson*, 477 U.S. at 255.

21  However, where videotape evidence contradicts the version of events asserted by one party, "the

22  court must "view[] the facts in the light depicted by the videotape.  *Scott v. Harris* 550 U.S. 372,

23  380-81 (2007).

REPORT AND RECOMMENDATION - 7

1    **B.    Requirements of 42 U.S.C. § 1983 Claim**

2    To state a claim under the civil rights act, 42 U.S.C. § 1983, a plaintiff must prove: (1) a

3    person acting under color of state law (2) deprived the plaintiff of a federal right. *Gomez v. City*

4    *of Toledo*, 446 U.S. 635, 640 (1980). A third element of causation is implicit in the second

5    element. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

6    A federal right under the Fourth Amendment is implicated by the use of objectively

7    unreasonable force during an arrest. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

8    Unreasonable application of handcuffs, such over-tightening them, can constitute excessive force

9    sufficient to state a Fourth Amendment claim. *Wall v. Cnty of Orange*, 364 F.3d 1107, 1112 (9th

10   Cir. 2004). However, a claimant must show that he "suffered injury as a result of being

11   handcuffed." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001).

12   The resolution of this case turns upon whether Plaintiff can meet that burden.

13   **C.    Injury as a Result of Being Handcuffed**

14   In *Arpin*, the Ninth Circuit affirmed summary judgment dismissing plaintiff's claim that

15   her Fourth Amendment rights were violated by excessive force while she was being handcuffed,

16   because her "claim of injury . . . is unsupported as she does not provide any medical records to

17   support her claim that she suffered injury as a result of being handcuffed." 261 F.3d at 922.

18   District courts following *Arpin* have similarly rejected claims of excessive force during

19   handcuffing where plaintiffs provide no medical evidence that handcuffing caused their injuries.

20   In *Startzell v. Velie*, No. C04-5259 RBL, 2005 WL 1645802 (W.D. Wash. July 12, 2005),

21   plaintiff alleged his arresting officers unreasonably forced his hands behind his back for

22   handcuffing after he informed them of a prior rotator cuff injury, and unreasonably refused to

23   loosen them after he complained of pain. The court granted summary judgment, because

REPORT AND RECOMMENDATION - 8

1   plaintiff "failed to produce any objective medical evidence that he sustained . . . injury resulting

2   from the handcuffs." *Id*. at *7.  The court also took note of plaintiff's five month delay before

3   seeking medical attention for his alleged injuries.  *Id.*  Similarly, the court in *James v. City of*

4   *Seattle*, No. C10-1612JLR, 2011 WL 6150567, *12 (W.D. Wash. Dec. 12, 2011) granted

5   summary judgment where there was "no evidence, medical or otherwise, that the handcuffing

6   aggravated" a prior injury to the plaintiff's wrist.  *See also West v. Eskes*, No. C07-617RSL,

7   2008 WL 4283056 at *11 (W.D. Wash. Sept. 17, 2008) (granting summary judgment dismissing

8   a claim of excessively tight handcuffing where the sole medical evidence was plaintiff's

9   complaint, five months after the arrest, of pain in his back and neck "without a single mention,

10   let alone objective findings, of wrist, hand, or finger damage.").

11       Here, there is no evidence that Plaintiff's injury was caused by the Defendants.  Plaintiff

12   has provided medical proof that, as of September 27, 2016 (eight weeks after his arrest), he had

13   sustained an injury to his finger.  Dkt 6-1.  However, Plaintiff submits no evidence, beyond his

14   own assertion, that this injury occurred during his arrest on August 3, 2016.  Instead, the

15   objective evidence conclusively establishes that there was no injury to Plaintiff's finger on that

16   date.  First, Plaintiff admits—and videotape and witness declarations confirm—that he never

17   mentioned an injury to his finger during his arrest, interview or booking processes, while he

18   repeatedly complained of an injured toe; nor does Plaintiff counter the evidence of Dr. Blauvelt

19   that the type of injury at issue causes "immediate pain, deformity and limited use."  Dkt 59 at p.

20   3.  Second, like the plaintiffs in *Startzell* and *West*, Plaintiff did not seek medical attention for his

21   injury until significantly after the date upon which he alleges that it occurred.  But most

22   importantly, it is abundantly clear from the multiple videos of Plaintiff on the date of his arrest

23   that he had not sustained any injury to his left hand on that day.  Contrary to his testimony, the

REPORT AND RECOMMENDATION - 9

1 │ video unequivocally shows that Plaintiff is able to bend his left hand, and to use it for multiple

2 │ activities in a normal fashion with absolutely no indication of pain; nor do the videos evidence

3 │ any swelling or disfiguration.

4 │     Where videotape evidence "quite clearly contradicts the version of the story told by the

5 │ [non-moving party]," a court deciding a summary judgment motion should accept the facts

6 │ "depicted by the videotape." *Scott*, 127 S. Ct. at 379, 380-81. *See also Menotti v. City of Seattle*,

7 │ 409 F.3d 1113, 1150 (9th Cir. 2005) (on summary judgement, the court "must credit video

8 │ evidence"); *Fillmore v. Sharp*, No. 2:10 cv 00620 JWS, 2011 WL 5191369 at *3 (D. Ariz. Nov.

9 │ 2, 2011) ("where video evidence contradicts a party's version of the events, on a motion for

10 │ summary judgment a court must accept the facts as depicted in the video[.]" (citing *Scott*));

11 │ *James* at *1 n. 4 (citing *Menotti* and *Fillmore*).  Here, there is no evidence of an injury to

12 │ plaintiff's finger on August 3, 2016.  Plaintiff cannot establish that any act by the arresting

13 │ officers caused his finger injury, which is the sole basis for his claim.  Accordingly, he cannot

14 │ establish a violation of his constitutional rights by the Defendants.[5]

15 │ **D.      Qualified Immunity**

16 │     Defendants argue that they are entitled to qualified immunity from damages.  As

17 │ discussed above, Plaintiff is unable to establish that he was harmed by any act of the Defendants

18 │ and has therefore failed to present a triable issue of fact supporting a violation of his

19 │

20 │ ───────────────
   │ [5] In his opposition, Plaintiff asserts that the officers were unreasonable in using the "high risk" handcuffing
21 │ procedure, because he did not resist arrest and was unarmed.  Dkt 60 at 2-3.  But Plaintiff conceded on videotape
   │ that he performed the robbery for which he was arrested by presenting a note stating that he had a gun.  Dkt 52, Ex.
   │ 1 at 52:42.  The arresting officers responded to a call for armed robbery (Dkt 50, ¶¶ 7, 13; Dkt 49, ¶¶5, 11); they
22 │ were not unreasonable in treating Plaintiff as though he was armed until they were able to handcuff and search him.
   │ However, the reasonableness of their use of the high risk technique is not relevant here, because the evidence is clear
23 │ that Plaintiff's injury did not occur as a result of their conduct. *See West* at *10 (whether force was excessive or not
   │ is "immaterial," where "plaintiff has presented no objective medical evidence of injury . . . stemming from this
   │ alleged use of excessive force").

REPORT AND RECOMMENDATION - 10

1    constitutional rights.  Accordingly, there is no violation to which the defense of qualified

2    immunity would apply, and the court need not reach the issue.

3                                        **CONCLUSION**

4          The Court recommends that Defendants' motion for summary judgment be **GRANTED**

5    and this action be **DISMISSED WITH PREJUDICE.**

6                                **OBJECTIONS AND APPEAL**

7          This Report and Recommendation is not an appealable order.  Therefore a notice of

8    appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

9    assigned District Judge enters a judgment in the case.

10         Objections, however, may be filed and served upon all parties no later than **June 12,**

11   **2012.**  The Clerk should note the matter for **June 15, 2018**, as ready for the District Judge's

12   consideration if no objection is filed.  If objections are filed, any response is due within 14 days

13   after being served with the objections.  A party filing an objection must note the matter for the

14   Court's consideration 14 days from the date the objection is filed and served.  The matter will

15   then be ready for the Court's consideration on the date the response is due.  Objections and

16   responses shall not exceed eight pages.  The failure to timely object may affect the right to

17   appeal.

18         DATED this 29th day of May, 2018.

19

20   _____

21   BRIAN A. TSUCHIDA
     Chief United States Magistrate Judge

22

23

REPORT AND RECOMMENDATION - 11